IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| CHRISTOPHER BEAL, | : |
| **Plaintiff,** | : |
| v. | : CASE NO: 7:19-cv-155 (WLS) |
| JIMMY MILES, *et al.,* | : |
| **Defendants.** | : |

## ORDER

Before the Court is the Recommendation (Doc. 330) filed August 13, 2022, by United States Magistrate Judge Thomas Q. Langstaff. Therein, Judge Langstaff recommends that the Court grant the Defendant Len Gibson's Motion for Summary Judgment (Doc. 313) ("Gibson MSJ"). Judge Langstaff's Recommendation provided the parties with fourteen days to file an objection. (Doc. 330 at 8.) By Order (Doc. 343) entered August 30, 2022, Plaintiff was given an additional fourteen days from the date of the Order, or until September 13, 2022, in which to file objections to the Recommendation. Plaintiff's "Objections to the Court's Order and Recommendations in (Doc. 330)" (Doc. 347) ("Objection") was timely filed effective September 8, 2022.[1]

For the reasons that follow, Judge Langstaff's Recommendation filed August 13, 2022, (Doc. 330) is **ACCEPTED** and **ADOPTED**.

I. **PROCEDURAL BACKGROUND**

On September 12, 2019, Plaintiff, proceeding *pro se*,[2] filed this action pursuant to 42 U.S.C. § 1983 ("*Beal I*"), alleging violations of his rights during the time he was an inmate at

---

[1] "Under the 'prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing. Absent evidence to the contrary, we assume that the prisoner's filing was delivered to prison authorities the day he signed it." *Daker v. Comm'r, Georgia Dep't of Corr.*, 820 F.3d 1278, 1286 (11th Cir. 2016) (alteration adopted) (internal quotations omitted) (citations omitted). Plaintiff's Objection was signed by Plaintiff on September 8, 2022 (Doc. 347 at 14) and docketed September 16, 2022.

[2] Because Plaintiff is proceeding *pro se*, his pleadings are liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

1

Valdosta State Prison ("VSP"). Plaintiff filed two additional cases in this Court, based on the same operative facts: Case No. 7:20-CV-42, filed March 10, 2020, captioned *Beal v. Georgia Department of Corrections*, e*t al.*, (M.D. Ga.) ("*Beal II*"), and Case No. 7:20-CV-146 filed July 28, 2020, captioned *Beal v. Hall, et al.*, (M.D. Ga.) ("*Beal III*"). Some of the parties and substantial portions of the allegations in the three cases are duplicative and intertwined. Thus, the cases were consolidated to conserve judicial resources and allow for the efficient and consistent resolution of Plaintiff's claims.[3]

Plaintiff's allegations against Len Gibson, Deputy Warden of Administration at VSP ("Gibson") were first asserted in *Beal II* and are contained in Plaintiff's recast complaint (*Beal II* Doc. 14) ("*Beal II* Complaint"). In his initial review of the *Beal II* Complaint under 28 U.S.C. § 1915(a)(A), Judge Langstaff recommended allowing Plaintiff's claim for violations of his Eighth Amendment rights on a claim of deliberate indifference to safety against Gibson to proceed. (*See* Order and Recommendation (*Beal II* Doc. 18 at 11-12) (accepted and adopted by Order (*Beal II* Doc. 39).) *See also* Recommendation (Doc. 287) (resolving various motions, including motions to dismiss, and providing detailed procedural history of consolidated cases) (accepted and adopted by Order (Doc. 291).)[4] References to Plaintiff's claims against Gibson cite to the *Beal II* Complaint.

In these consolidated cases, Plaintiff bases his claims against the various defendants on five incidents that occurred while he was an inmate at VSP. His allegations that Gibson acted with deliberate indifference to his safety arise from an incident occurring on April 22, 2019, in which Plaintiff was attacked by an inmate. (*Beal II* Compl. 2.) The attack exacerbated injuries to Plaintiff's face and left eye that had been sustained in a prior altercation with inmates in

---

[3] *See Beal II* Order entered January 27, 2021 (Doc. 39 accepting and adopting Recommendation (Doc. 18)); *Beal III* Order entered January 4, 2021 (Doc. 24, accepting and adopting Recommendation (Doc. 13)). *Beal I* is the lead case, and unless otherwise noted, document citations are to the docket in *Beal I*.

[4] After entry of the Order (Doc. 291) accepting and adopting the Recommendation (Doc. 287), Plaintiff's claims against the following VSP employees were also allowed to proceed: (a) Jennifer Wolters, Corrections Officer for deliberate indifference to safety; and (b) Hillary Coleman, Corrections Officer for deliberate indifference to safety. These defendants also filed motions for summary judgment which will be addressed by separate orders of the Court. Plaintiff's claims against the following VSP employees were also allowed to proceed and are pending before the Court: (a) Captain Jimmy Miles for excessive force; (b) LeeAnna Smith, Unit Manager for failure to intervene and deliberate indifference to safety; (c) Mark Pack for excessive force; and (d) Sgt. Hunter Hall for excessive force. Plaintiff voluntarily dismissed his claim against VSP Cadet William Wilkerson for failure to intervene (*see* Order Doc. 361), and Plaintiff's claims against Avery Moody, Medical Director of VSP, for deliberate indifference to a serious medical need were resolved by entry of the Court's Order (Doc. 364) granting Moody's motion for summary judgment.

March 2019. (*Id.*) Plaintiff alleges that Gibson acted with deliberate indifference to his safety by housing Plaintiff in the D-1 Dormitory at VSP and denying his requests to move to a safer dormitory. (*Id.*) Plaintiff asserts that Gibson knew that Plaintiff had previously been assaulted in February 2019 and March 2019, that the D-1 Dormitory housed some of the most violent inmates and gang members, that VSP was understaffed, and that placing Plaintiff in that dormitory put Plaintiff in a violent environment and at a substantial risk to his safety. (*Id.*) The February 2019, March 2019, and April 22, 2019 attacks are described in detail, *infra*, Part III.A.

## II. STANDARD OF REVIEW

### A. District Court's Review of Recommendation Regarding Dispositive Motions

With respect to dispositive motions, "a [district] judge may . . . designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court. . . ." 28 U.S.C. § 636(b)(1)(B). A judge of the district court shall make a *de novo* determination of those portions of the recommendation to which an objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. If no timely objection is filed, the court considers the recommendation for clear error. "Most circuits agree that in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (alteration adopted) (internal quotation marks omitted) (citation omitted).

To properly object to the Recommendation, Plaintiff is required to provide "written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort*, 208 F. App'x at 783 (internal quotation marks omitted) (citation omitted). "It is critical that the objection be sufficiently specific and not a general objection to the report." *Id.* at 784. "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Shuler v. Okeechobee CI Warden*, 815 F. App'x 457, 458 (11th Cir. 2020) (internal quotations marks omitted) (citation omitted). Plaintiff lists three objections to the Recommendation:

3

1. Plaintiff objects to Judge Langstaff's "Finding of Facts pertaining to the substantial risk of serious harm subjected to Plaintiff (Doc. 330 pp. 5-6)." (Doc. 347 at 5.)

2. Plaintiff objects to Judge Langstaff's "Findings of Fact pertaining to the deliberate indifference to a substantial risk of harm (Doc. 330, pp. 6-7)." (*Id.*)

3. Plaintiff objects to Judge Langstaff's "Findings of Fact pertaining to causation and qualified immunity as to Len Gibson (Doc. 330, pp. 7-8)." (*Id.*)

To the extent these objections are stated with specificity, they are addressed below.

### B. Motion for Summary Judgment Standard

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.'" *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party."

4

*Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The movant can meet that burden by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts.'" *Matsushita*, 475 U.S. at 586 (citations omitted).

Also relevant in this case, is that the *Beal II* Complaint is verified, and, therefore, "serves as the equivalent of an affidavit for purposes of summary judgment." *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (citation omitted). *See also United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (en banc) ("[O]ur cases correctly explain that a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment."). The "affidavit cannot be conclusory" and "must set out facts that would be admissible in evidence." *Id.* at 856-57. Thus, to the extent Plaintiff's statements and allegations are based on personal knowledge or observation, are otherwise admissible evidence, and are not conclusory in nature, they are appropriate for the Court's consideration in resolving Gibson's MSJ.

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587-88; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### C. 42 U.S.C. § 1983

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend VIII; *McBride v. Rivers*, 170 Fed. App'x 648, 654 (11th Cir. 2006); *see also Robinson v. California*, 370 U.S. 660, 675 (1962) (holding that the Eighth Amendment's ban on

cruel and unusual punishments is made applicable to the states by virtue of the Fourteenth Amendment's Due Process Clause).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich,* 340 F.3d 1279, 1282–84 (11th Cir. 2003).

Plaintiff claims that Gibson was deliberately indifferent to his safety. Pursuant to the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (alteration adopted) (internal quotation marks omitted); *see also id.* ("[H]aving stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course."); *Jordan v. Doe*, 38 F.3d 1559, 1564 (11th Cir. 1994) ("[W]hile the Constitution does not require prisons to be comfortable, it also does not permit them to be inhumane, and it is now settled that the … conditions under which [a prisoner] is confined are subject to scrutiny under the Eighth Amendment.").

"[N]ot … every injury suffered by one prisoner at the hands of another … translates into a constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. The law recognizes that "[i]n the jail setting, a risk of harm to some degree always exists by the nature of its being a jail." *Purcell ex rel. Est. of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1323 (11th Cir. 2005) (citing *Wilson v. Seiter*, 501 U.S. 294 (1991)). Put another way, "to prove a claim of deliberate indifference in violation of the Eighth Amendment, the plaintiff must show that: (1) there was substantial risk of serious harm (the objective component); (2) the defendants acted with deliberate indifference to that risk (the subjective component); and (3) the defendants' wrongful conduct caused the injury." *Staley v. Owens*, 367 Fed. App'x 102, 107 (11th Cir. 2010) (per curiam) (citing *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (per curiam)). To show that a prison official was deliberately indifferent, a plaintiff must show the prison official knew that plaintiff faced a substantial risk of serious harm and that the

6

prison official disregarded that risk by failing to take reasonable measures to abate the risk. *Farmer*, 511 U.S. at 847.

> [A] defendant may avoid liability by showing that: (1) he was unaware of the underlying facts indicating a substantial risk; (2) he believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent; or (3) he responded reasonably to the risk, even if the harm ultimately was not averted.

*Staley*, 367 F. App'x at 107 (11th Cir. 2010) (internal quotation marks omitted) (citation omitted).

### D. Qualified Immunity

Gibson asserts he is entitled to the protection of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. There are two parts to the qualified immunity analysis: (1) the relevant facts must set forth a violation of a constitutional right, and (2) the defendant must have violated a constitutional right that was clearly established at the time of defendant's conduct. *Id*. at 232.

> The Eleventh Circuit has held that:
>
> To be eligible for qualified immunity, the official must first establish that he was performing a discretionary function at the time the alleged violation of federal law occurred. Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity. In order to demonstrate that the official is not entitled to qualified immunity, the plaintiff must show two things: (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was clearly established at the time he did it.

*Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (internal quotation marks omitted) (citations omitted). Thus, in the Eleventh Circuit, the Court first determines whether Gibson was engaged in a discretionary function before moving on to determine whether Plaintiff has presented relevant facts that Gibson committed a constitutional violation and that violation

7

was clearly established at the time of Gibson's conduct. "To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook are of a type that fell within the employee's job responsibilities." *Id* at 1332 (internal quotations marks omitted) (citation omitted).

### III. PLAINTIFF'S ALLEGATIONS AND DEPOSITION TESTIMONY

#### A. Attacks Forming Basis of Plaintiff's Allegations Against Gibson

As indicated above, Plaintiff asserts he received injuries in five incidents that occurred while he was an inmate at VSP. The following three incidents are directly relevant to Plaintiff's allegations against Gibson.

#### 1. February 24, 2019 – Plaintiff attacked by his roommate

On February 24, 2019, Plaintiff asserts he was "'drugged', sexually assaulted, and stabbed 21 times by his gang member roommate." (*Beal II* Compl. 2; Beal Depo. 44:12—13[5] (Plaintiff reading medical summary of Avery Moody, Medical Director, VSP).) Plaintiff suffered multiple stab wounds to his head, chest, and a bite in the right upper chest. He was sent to the emergency room, seen and released. (Beal Depo. 44:13—19.)

#### 2. March 13, 2019 – Plaintiff attacked by three inmates

Plaintiff states that on March 13, 2019, he was attacked by three inmates he believes were members of the Gangster Disciples gang. The attack happened in Dormitory B-2 at VSP. During the attack, Plaintiff was stabbed in the eye. (*Beal II* Compl. 6; Beal Depo. 24:7—25:14.) Plaintiff states he did not go to "Medical"[6] the night the attack occurred because he did not want to say anything. (Beal Depo. 25:17—19.) Plaintiff did not explain why he did not want to say anything.[7] In any event, Plaintiff testified that the next day (March 14, 2019), his eyeball started bleeding and the "lieutenant" saw his eye and sent him to Medical. He was then rushed to the ophthalmologist. (*Id.* at 25:19—23; *see also Beal II* Compl. 4, 6.) Plaintiff alleges the

---

[5] Plaintiff's deposition was taken on April 28, 2022 ("Beal Deposition"). A copy of the deposition is attached as Exhibit A to Gibson's MSJ (Doc. 313-1). The page numbers in the citations to Beal's Deposition are the deposition page number rather than the CM/ECF page numbers of Exhibit A.

[6] "Medical" refers to the medical unit inside VSP.

[7] In reviewing Plaintiff's Georgia Department of Corrections medical records, the Court notes an entry dated March 14, 2019, stating: "I/M [inmate] claims 'they' were horseplaying & he got hit in the eye, actually both eyes were injured 2 days ago." (Doc. 316-2 at 69.) It is not clear what, if any, effect or significance this potential discrepancy as to how and when Plaintiff's injuries were incurred, might have on these cases.

ophthalmologist told him his left eyeball was crushed and that it may take a couple of months to heal. (*Beal II* Compl. 6.) Plaintiff further asserts that he was told that he should be placed somewhere safer so he would not receive any further harm. (*Id.*; *see also* Doc. 5 at 8 (Plaintiff identifying Ms. Nobles, the manager at the ophthalmologist at Southern Georgia Eye Partner ("SGEP") as the person stating he needed to be placed somewhere safe so his eye could heal).)

On returning to VSP on March 14, 2019, Plaintiff testified he was placed in K-2 tier lockdown because of the severity of the incident. (*Beal II* Compl. 6; Beal Depo. 26:6—25.)

### 3. April 22, 2019 – Plaintiff attacked by inmate

On March 26, 2019, Plaintiff was moved from K-2 tier lockdown to the D-1 Dormitory. Plaintiff considered D-1 to be a dangerous location because there were gang-affiliated inmates in the dormitory and Plaintiff is a "civilian," not a gang member. (Beal Depo. 27—30.) Plaintiff filed grievances attempting to be moved to a safer area, but they were rejected. (*Id.* at 28-29.)

Plaintiff testified that on April 22, 2019, he was attacked by a member of the "Bloods" gang while in D-1 Dormitory. (*Beal II* Compl. 6; Beal Depo. 27:12—17.) The incident started when the inmate attempted to take Plaintiff's food and Plaintiff refused to give his food to the inmate. (Beal Depo. 29:17—20.) The inmate punched Plaintiff in the face and in his left eye which had already been damaged during the March 13, 2019 attack. (*Id.*) Immediately after the incident, Plaintiff was taken to Medical and then to South Georgia Medical Hospital. (*Id.* at 31.) Plaintiff was told at the hospital that "the entire left half of his face was fractured, his eye was severely damaged, and he needed plastic surgery." (*Beal II* Compl. 6.)

Plaintiff returned to VSP on April 22, 2019. (*Beal II* Compl. 6; Beal Depo. 32:23—25.) Plaintiff agreed that the April 22, 2019 attack made the injuries from the March 13, 2019 attack worse. (*Id.* at 32:19—22.)

### B. Plaintiff's Allegations

Plaintiff asserts that Gibson was deliberately indifferent to Plaintiff's safety by placing him in, and/or failing to move him from, the D-1 Dormitory where he was attacked on April 22, 2019. (*Beal II* Compl. 2.) Plaintiff contends that his medical file and VSP prison records show that Plaintiff had previously been drugged, stabbed, and sexually assaulted in the February 2019 attack and that he was further injured in the March 2019 attack. (*Id.*) Plaintiff

9

contends that Gibson knew of these prior attacks and knew that Plaintiff was unable to defend himself because of his injuries. (*Id.*) Plaintiff also asserts Gibson knew that Plaintiff was documented in the prison records as a "scribe,"[8] that Plaintiff was a non-gang member, and that he was at an increased risk of attracting abuse and violence. (*Id.*) Plaintiff contends that knowing all of these alleged facts, Gibson disregarded the risk to Plaintiff's safety, failed to use reasonable measures to abate the risk, and thereby caused Plaintiff to suffer the injuries he incurred in the April 22, 2019 attack. (*Id.*)

## IV.   ANALYSIS OF GIBSON'S MOTION FOR SUMMARY JUDGMENT

### A. Gibson's MSJ

The Declaration of Len Gibson (Doc. 313-2) ("Declaration") is provided in support of Gibson's MSJ. Therein, Gibson states that during the times relevant to Plaintiff's allegations against him, March 2019 and April 2019, Gibson was the Deputy Warden of Administration at VSP (Decl. ¶ 2). Gibson states that he is familiar with Plaintiff. (*Id.* ¶ 3.) Gibson states that he did not have, and does not recall having, any conversations with Plaintiff during March or April 2019, regarding Plaintiff's concerns about any specific threats to his safety from other inmates. (*Id.* ¶¶ 4, 8.) Gibson further states that during March or April 2019, no one at VSP reported to him any concerns regarding any specific threats from inmates to the safety of Plaintiff. (*Id.* ¶ 5.) Gibson states he was not present at Dormitory D2[9] during the April 22, 2019 attack on Plaintiff. (*Id.* ¶ 7.) As to procedures at VSP, Gibson states that as Deputy Warden of Administration, he does not have any involvement in determining housing assignments of inmates. (Decl. ¶ 9.) Nor are inmate grievances forwarded to him for review at any time as a part of the SOP Grievance Procedure. (*Id.* ¶ 10.)

Gibson attached to his Declaration a true and correct copy of the Grievance History of Plaintiff. (Decl. ¶ 12; *see also* Doc. 313-4.) He also attached to his Declaration a "true and

---

[8] Plaintiff uses the term "scribe" in a negative sense as though it is another reason he would be subject to attack by gang member inmates. However, the meaning of the term is not explained in the record. Thus, the Court does not understand why Plaintiff being documented as a "scribe" should place him at an increased risk of being abused by other inmates.

[9] The Court notes that the attack on Plaintiff happened in the D-1 Dormitory. (*Beal II* Compl. 6; Beal Depo. 27:9—11..) The reference to D2 appears to be a typographical error as the correct reference to D1 appears in Gibson's Statement of Undisputed Material Facts (Doc. 313-5 ¶¶ 8, 9, 16) as well as throughout Gibson's Brief in Support of Gibson's MSJ (Doc. 313-6).

correct copy of the SCRIBE report of Grievance 272597 that was submitted by inmate Christopher Beal on July 26, 2018 [which] accurately reflects the information submitted by Beal in Grievance No. 272597." (*Id.* ¶ 11; *see also* Doc. 313-3.) Gibson contends that the Plaintiff's grievance history reflects that the only grievance filed by Plaintiff prior to the April 22, 2019 attack regarding "conditions of confinement" was Grievance 272597 filed July 26, 2018. (Doc. 313-3, 313-6 at 5.) Gibson argues that nowhere in that grievance does Plaintiff mention any concerns about being housed in dormitories with gang member inmates. (Doc. 316-6 at 5-6.)

### B. Plaintiff's Objections to Recommendation and Response to Gibson's MSJ

Gibson contends that he is entitled to summary judgment because Gibson did not violate Plaintiff's Eighth Amendment rights and Gibson is entitled to qualified immunity. As reflected above, to successfully oppose Gibson's MSJ, Plaintiff must prove that: (1) there was a substantial risk of serious harm to Plaintiff (the objective component); (2) Gibson acted with deliberate indifference to that risk (the subjective component); and (3) Gibson's wrongful conduct caused the injury." *Staley*, 367 Fed. App'x at 107 (citing *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003)).

#### 1. Plaintiff failed to provide sufficient showing of a substantial risk of serious harm (the objective element).

Plaintiff objects to Judge Langstaff's finding that he did not show a substantial risk of harm. "A substantial risk to a prisoner's safety may arise not only out of his individual situation, but out of an environment of longstanding and pervasive attacks to which all prisoners in his situation are exposed, and it may come from single or multiple sources." *Staley*, 367 F. App'x at 107 (citing *Farmer*, 511 U.S. at 842-43.)

Plaintiff asserts he provided evidence in the form of his deposition concerning the dangerous conditions of being housed at an understaffed prison and being placed in the D-1 Dormitory with violent and dangerous gang members who made up a substantial majority (98 percent) of the dormitory population. (Doc. 321 at 22; Doc. 347 at 7, 8.) Viewing the record evidence in the light most favorable to Plaintiff, the Court agrees with Judge Langstaff that Plaintiff failed to show that being housed in the D-1 Dormitory posed the substantial risk of serious harm necessary for a violation of the Eighth Amendment.

11

First, there is no evidence, let alone admissible evidence, that VSP was understaffed during the relevant time period. Nor has Plaintiff provided any admissible documentation that reflects that the vast majority of the inmates in the D-1 Dormitory were gang members or that there had been *any* attacks by gang member inmates on non-gang member inmates in the D-1 Dormitory, or in VSP, prior to April 22, 2019 attack. Plaintiff's conclusory statements in his pleadings that the vast majority of the inmates housed in D-1 Dormitory were violent and dangerous inmates, do not constitute admissible evidence. Plaintiff is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

Plaintiff's deposition testimony regarding the injuries he sustained in the February 24, 2019 and March 13, 2019 attacks is admissible evidence. It is undisputed that Plaintiff was assaulted by his gang member roommate in February 2019 and that Plaintiff was stabbed in March 2019 by a gang member inmate. However, Plaintiff has not introduced any admissible evidence showing in which dormitory or in what location, the February 2019 attack occurred, the reason for the attack, or the gang in which his inmate was a member. The record shows that the March 2019 attack occurred in the B-2 Dormitory and was related to Plaintiff's refusal to give his food to his attacker. The reason the inmate targeted Plaintiff is unknown and there is nothing in the record on which the Court can draw a reasonable inference that Plaintiff was or was not targeted because of his non-gang member status. (*See* Beal Depo. 24:7—25:14.)

Plaintiff has not provided admissible evidence of any other inmate-on-inmate attacks, whether gang related or not, that occurred in the D-1 Dormitory prior to the April 22, 2019 attack on Plaintiff. Thus, Plaintiff's admissible evidence consists of two attacks by gang member inmates on Plaintiff that occurred in the two months prior to the April 22, 2019 attack. In his deposition testimony, Plaintiff testified that he does not believe the April 22, 2019 attack by the "Bloods" gang member is related to the earlier March 13, 2019 attack by the Gangster Disciples. (*Id.* 29:21—23.) Where Plaintiff himself does not believe the March 13 and April 22, 2019 attacks are related, it is difficult to draw an inference in Plaintiff's favor that he was in serious risk of harm by being placed in the D-1 Dormitory.

Plaintiff, citing *Marsh v. Butler Cnty.*, 268 F.3d 1014 (11th Cir. 2001) (en banc), *abrogated in part by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), argues in his response to Gibson's MSJ (Doc. 321) ("Response to MSJ"), that a serious risk of harm may exist when two prisoners

12

were injured even in the absence of numerous previous assaults. (Doc. 321 at 13.) *Marsh* is procedurally distinguishable from Plaintiff's case as *Marsh* was before the court on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) rather than a motion for summary judgment filed under Fed. R. Civ. P. 56. Therefore, the *Marsh* court was required to accept all well-pled factual allegations in the complaint as true. Plaintiff here is past that stage and, as indicated above, he was required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. To avoid summary judgment, Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted).

To support his motion for summary judgment, Gibson bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Gibson met his burden by demonstrating that Plaintiff failed to present evidence in support of an essential element of Plaintiff's case on which Plaintiff bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Here, Plaintiff failed to show that he was at substantial risk of serious harm by being placed in the D-1 Dormitory.

**2. Plaintiff failed to provide a sufficient showing that Gibson acted with deliberate indifference to a substantial risk of harm.**

Even if Plaintiff had shown that placing him in the D-1 Dormitory placed Plaintiff at substantial risk of serious harm, Plaintiff failed to provide evidence in support of the second element of his claim that Gibson acted with deliberate indifference to his safety. To show that Gibson was deliberately indifferent, Plaintiff must show that Gibson knew that Plaintiff faced a substantial risk of serious harm and that Gibson disregarded that risk by failing to take reasonable measures to abate the risk. *Farmer*, 511 U.S. at 847.

Gibson asserts Plaintiff never had any conversations with Gibson prior to the April 22, 2019 attack. Plaintiff's deposition testimony confirms Gibson's assertion. (Beal Depo. 27:20—23.) Plaintiff asserts he "spoke" with Gibson through his grievances concerning Plaintiff's overall wellbeing and lack of safety by being housed in the D-1 Dormitory. (Beal Depo. 27:23—28:25.) As noted above, Gibson contends that prior to the April 22, 2019 attack Plaintiff filed one grievance regarding "conditions of confinement." That was Grievance 272597 filed July 26, 2018. (Doc. 313-3, 313-6 at 5.) Gibson contends that there is no

indication in that grievance that Plaintiff has any safety concerns about being housed in dormitories with gang member inmates. (Doc. 316-6 at 5-6.)

Plaintiff also provided copies of his Grievance History and Grievance 272597. (*See* Doc. 321 at 15 (citing to Doc. 70 and attachments 2-13 for copies of history and grievances)). In his Response to MSJ, Plaintiff asserts he filed Grievance 272597 "concerning his health, safety, and overall wellbeing being . . . , being denied medical treatment and being able to be sane and safe and asked to be moved to A-2 to avoid being at risk of harm." (Doc. 321 at 15 (citing Doc. 70 and attachments)); *see also* Doc. 70-18 (Plaintiff's original handwritten Grievance 272597)).) The Court's review reflects that the copy of Grievance 272597 filed by Gibson is not a complete copy of the full text of Plaintiff's grievance. (*See* Doc. 313-3 (missing referenced attachment continuing Plaintiff's grievance).) In part, the missing language provides: "I [Plaintiff] advised all administration that [I'm] safe on A yard because C&D yard [don't] like me because [I'm] a homosexual . . . . There is a dorm that I can go to in A building with people like me and [it's] less problems." (Doc. 70-18 at 2.) The grievance reflects that it was rejected solely because it contained more than one issue/incident. (Doc. 313-3.)

Gibson's use of the phrase "conditions of confinement" is not without purpose. In making his assertion that Plaintiff filed only one grievance (272597) prior to the April 22, 2019 attack, Gibson appears to rely solely on VSP's categorization of grievances as "Assignment/Classification" or "Conditions of Confinement." By relying on these categories, Gibson ignores the content of Plaintiff's grievances. The Court finds this position disingenuous because Plaintiff's argument is that his assigned housing is unsafe. In his Response to Gibson's MSJ, Plaintiff refers to Grievance 272592[10] filed July 12, 2018, in which he states he "refused housing at VSP due to the rampant violence and stabbing and me being vulnerable to severe injuries and abuse and requested to be housed in a safer dormitory to be free from harm and etc." (Doc. 321 at 15.) Plaintiff, however, did not provide a copy of Grievance 272592 or 272174 filed July 12, 2018.

Gibson is correct that Grievance 272597 does not mention a concern for his safety that related to gang member attacks as alleged in the *Beal II* Complaint. More significantly, the

---

[10] Plaintiff's Grievance History does not reflect a Grievance 272592. This appears to be a transcription error on Plaintiff's part as the history reflects Grievance 272174 in the category "Assignment/Classification" was filed on July 12, 2018. (See Docs. 70-2; 313-3, 313-4.)

14

grievance states a general concern by Plaintiff for his safety from attacks by essentially all inmates in the C and D yards at VSP. This is simply to general a statement of risk—whether related to safety concerns based on non-gang member vs. gang member inmates or related to safety concerns based on Plaintiff's sexuality—on which to base a claim of deliberate indifference.

> [B]efore [Gibson's] awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [an inmate's] generally problematic nature.
>
> Even assuming the existence of a serious risk of harm and legal causation, [Gibson] must be aware of *specific* facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference.

*Carter*, 352 F.3d at 1349 (emphasis added) (internal quotation marks omitted) (citation omitted). Plaintiff's grievance did not identify a specific person or an identifiable group of persons who posed a serious risk of harm to Plaintiff. Instead, the grievances asserted, that every inmate in two yards at VSP allegedly posed a risk of harm to Plaintiff.[11]

Further, Plaintiff' has not shown that Gibson's duties, as Deputy Warden of Administration, include reviewing and knowing the content of every grievance filed by inmates at VSP. In fact, Gibson declares that as Deputy Warden, the inmate grievances are not forwarded to him at any time. (Decl. ¶ 10.)

Plaintiff asserts that Gibson knew that after the March 13, 2019 attack, Plaintiff was supposed to be housed in a safer unit, such as the infirmary. (Doc. 347 at 10, 14.) However, Plaintiff did not provide any medical records, or other admissible evidence, supporting his statement that anyone at the ophthalmologist's office told him that he needed to be placed in a safer place until he was fully healed. Nor did Plaintiff provide admissible evidence to support his conclusion that the "safer place" meant Plaintiff was to be placed in the infirmary.

---

[11] In his Response to Gibson's MSJ and his Objection to the Recommendation, Plaintiff attempts to support his allegations by multiple grievances filed after the April 22, 2019 attack as well as allegations of additional attacks on himself by inmates on August 18, 2021 and January 7, 2022. (*See* Doc. 321 at 16, 18-20, 23; Doc. 347 at 10-11.) As Judge Langstaff notes, Plaintiff's motion to amend his complaint to add these claims was previously denied. (Doc. 330 at 4 n.4; *see also* Order and Recommendation Doc. 295.) Plaintiff's allegations are irrelevant to these consolidated cases and are not considered herein.

15

Finally, it is difficult to find that Gibson was aware of a serious risk of harm when Plaintiff himself could not identify or specify the source of the supposed risk of harm. At his deposition, Plaintiff responded to the following question regarding the April 22, 2019 attack:

> Q  Okay. So I just want to make it clear. You're saying that you didn't know prior to that incident that on April 22nd that you were going to be attacked, right?
>
> A  No, sir. Well, I can say that I kind of, sort of did in a way because me – me being a civilian at a prison housed full of nothing but gang members makes me more vulnerable to being attacked and abused. Because I'm – I'm singled out. You know what I'm saying? And when you got – when you in a 50 man – when you in a 50 man dorm and 40 of them gang members, they don't want to start a war with each other. So they pick – they – they single out the vulnerable one. And I'm nothing but 5-7 and 140 pounds. So yes, I did know I was going to be attacked.

*Id.* at 29:24—30:14. Plaintiff states he did not know who was going to attack him but expected he was going to be attacked – "Any day. Times. Spur of the moment." *Id.* at 30:24—25. Essentially, Plaintiff did not expect to be attacked by any particular inmate or group of inmates housed in the D-1 Dormitory. Plaintiff's position appears to be that it was inevitable that as a non-gang member, he was going to be attacked in that dormitory. As noted above, Plaintiff did not provide any evidence that the inmates in D-1 Dormitory contained a very large percentage of gang members in relation to non-gang members, or that there had been other attacks by gang members on non-gang members in the compound. Nor did Plaintiff provide any evidence that the D-1 compound was more dangerous than other compounds in which he had been housed.

As such, Plaintiff failed to make a sufficient showing on the essential element that Gibson, knowing that Plaintiff was at substantial risk of serious harm by being house in the D-1 Dormitory, failed to take reasonable measure to abate the risk to Plaintiff. Plaintiff has the burden of proof on this issue. There is no genuine dispute of material fact as to whether Plaintiff has shown that Gibson was deliberately indifferent to his safety. Therefore, Len Gibson is entitled to judgment as a matter of law.

### C. Qualified Immunity

As to qualified immunity, "Plaintiff objects to Judge Langstaff's "Findings of Fact pertaining to causation and qualified immunity as to Len Gibson (Doc. 330, pp. 7-8)." (Doc. 347 at 5.) Unlike his objections to Judge Langstaff's findings on the elements of substantial

16

risk of serious harm and deliberate indifference, Plaintiff did not add any substance to or make any specific arguments to support this objection. He simply restated his arguments that Gibson violated the Eighth Amendment by his deliberate indifference to Plaintiff's safety. "It is critical that the objection [to a recommendation] be sufficiently specific and not a general objection to the report." *Macort*, 208 F. App'x at 784. While *pro se* pleadings are liberally construed, *Shuler*, 815 F. App'x at 458, the Court cannot develop legal argument for Plaintiff. *See Butler v. Broward Cnty. Cent. Examining Bd.*, 367 Fed. App'x. 991, 992 (11th Cir. 2010) ("Courts are not allowed to act as de facto counsel or to rewrite a deficient pleading."); *Swain v. Col. Tech. Univ.*, No. CV414-071, 2014 WL 3012693, at *1 (S.D. Ga. June 12, 2014) ("Judges . . . at most can construe liberally what *pro se* litigants say factually, but they cannot develop legal arguments or plug the legal holes in their cases for them.").

Plaintiff has not provided any substance to his "objection" regarding qualified immunity, and the Court has already responded to his objections relating to Gibson's alleged Eighth Amendment violation and determined that Gibson is entitled to judgment as a matter of law. Upon review, the Court agrees with Judge Langstaff's finding that Gibson is also entitled to qualified immunity.

## V. CONCLUSION

Upon full review and consideration of the record, the Court finds that Judge Langstaff's Recommendation (Doc. 330) should be, and hereby is, **ACCEPTED, ADOPTED**, and made the Order of this Court for the reasons stated, findings made, and conclusions reached therein, together with the reasons stated, findings made, and conclusions reached herein. Accordingly, Defendant Len Gibson's Motion for Summary Judgment (Doc. 313) is **GRANTED**. Plaintiff's Objection to the Recommendation (Doc. 347) is **OVERRULED**. It is further **ORDERED AND ADJUDGED** that Plaintiff Christopher Beal shall take nothing by his complaint against Defendant Len Gibson and judgment shall be entered in the Defendant Len Gibson's favor and against Plaintiff

**SO ORDERED**, this 5th day of April 2023.

/s/W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**